IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TWO FARMS, INC. *d.b.a.* ROYAL FARMS,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE CO. | Civil No. CCB-22-cv-1551 |

## MEMORANDUM

This is an insurance coverage dispute between Two Farms, operator of the popular mid-Atlantic convenience store chain "Royal Farms," and Zurich American Insurance Company, its insurer. The controversy stems from a fire that destroyed a Two Farms convenience store on Halloween 2021. After Two Farms filed a reimbursement claim, Zurich issued a denial, explaining that the affected property was not covered under Two Farms' insurance policy. Two Farms sued. Each party contends that a straightforward interpretation of the contract resolves the case in its favor, and each has filed a motion for summary judgment to that effect. After reviewing the agreement and accompanying briefing, the court disagrees. It concludes instead that the policy is ambiguous and that additional discovery is necessary to resolve the scope of its coverage. Accordingly, both motions for summary judgment will be denied without prejudice.

## BACKGROUND

Two Farms purchased the insurance policy that would become the precursor to this litigation in 2015. Until then, Two Farms' property was insured through another provider, Hartford Fire Insurance Company. Aff. of John Pierson ¶ 5, ECF 17-16 ("Pierson Aff."). But in 2015, Two Farms decided to migrate its coverage from Hartford to a new carrier, and engaged an insurance broker, Lyons Insurance Agency, to solicit bids. *Id.* ¶¶ 1-5, 11. One of those bids came

1

from Zurich. Zurich provided a quote to Lyons, and after the two sides exchanged a number of emails fine tuning coverage amounts, Lyons informed Zurich that Two Farms had accepted its bid. *See id.* ¶¶ 11, 15-17; Pierson Aff. Ex. 8, ECF 17-9. The parties entered a one-year coverage agreement in July 2015 and have renewed it in one-year installments every year since. *See* Pierson Aff. ¶¶ 17-21.

After maintaining what appear to have been successful dealings for the first five years of the relationship, the parties reached a crossroads in 2021 when Zurich denied one of Two Farms' reimbursement claims. On October 31, 2021, a fire destroyed a Two Farms-operated convenience store located at 1630 West Joppa Road in Towson, Maryland. *Id.* ¶ 4. Two Farms submitted a claim, but Zurich denied it, explaining that the Joppa Road property was not within the scope of Two Farms' coverage. *See* Pierson Aff. Ex. 12, ECF 17-13. Two Farms continued pursuing the claim with Zurich, but Zurich maintained its position that the property was not covered, prompting a standoff. *See* Pierson Aff. Ex. 6, ECF 17-7.

Once the stalemate calcified, Two Farms sued. It filed its complaint in the state court for Baltimore County in May 2022 and Zurich removed to this court the following month, invoking diversity jurisdiction. *See* Notice of Removal, ECF 1. Two Farms then filed a federal complaint, *see* Compl., ECF 4, and Zurich answered, *see* Answer, ECF 8. The parties conducted discovery between July 2022 and February 2023 when, before the discovery deadline and with discovery disputes still outstanding, Zurich moved for summary judgment. Mot. for Summ. J., ECF 14 ("Mot."); *see* Status Reports, ECFs 15-16; Scheduling Order, ECF 13. Two Farms responded, opposing Zurich's motion and filing a partial cross-motion for summary judgment of its own, limited to the issue of liability. *See* Partial Cross-Mot. for Summ. J., ECF 17. Zurich filed a reply in support of its motion and opposing Two Farms' motion, *see* Resp., ECF 20, and Two Farms

filed a reply in support of its cross-motion, *see* Response, ECF 21. That concluded briefing of the motions, and because no hearing is necessary, the court will now resolve them. *See* Local Rule 105.6.

## LEGAL STANDARD

The parties each move for summary judgment. Under Federal Rule of Civil Procedure 56(a), summary judgment will be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

Cross-motions for summary judgment are analyzed as two distinct summary judgment motions. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). The court views the evidence in the light most favorable to the nonmoving party as to each motion, *Tolan v. Cotton*, 572 U.S. 650, 656-67 (2014) (per curiam), and draws all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N. C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015).

**ANALYSIS**

The motions for summary judgment ask the court to interpret the parties' insurance contract and determine whether the Joppa Road convenience store falls within its scope. The outcome of that task turns on the court's interpretation of the policy. After reviewing the agreement under the applicable method of construction, the court concludes its terms are sufficiently ambiguous to preclude granting summary judgment at this stage for either side. The court will thus deny each party's motion for summary judgment pending additional discovery.

Under Maryland law, "the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts." *Cordish Companies, Inc. v. Affiliated FM Ins. Co.*, 573 F. Supp. 3d 977, 993 (D. Md. 2021) (collecting cases), *aff'd,* No. 21-2055, 2022 WL 1114373 (4th Cir. Apr. 14, 2022).[1] Accordingly, "the primary principle of construction is to apply the terms of the insurance contract itself." *Universal Underwriters Ins. Co. v. Lowe*, 761 A.2d 997, 1005 (Md. Ct. Spec. App. 2000). The court does this by interpreting the policy "as a whole, according words their usual, everyday sense, giving force to the intent of the parties, preventing absurd results, and effectuating clear language." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 495 (4th Cir. 1998).

After conducting such an analysis, the court determines the meaning of unambiguous contract terms as a matter of law. *See Spacesaver Sys., Inc. v. Adam*, 98 A.3d 264, 268 (Md. 2014). Where a contract term is ambiguous, however, the court may look to extrinsic evidence to adduce its meaning. *Sy-Lene of Washington, Inc. v. Starwood Urb. Retail II, LLC*, 829 A.2d 540, 547 (Md. 2003). Should a term still prove inscrutable after consulting such evidence, the court ultimately construes the ambiguity against the drafter, but "unlike the majority of other states,

---

[1] The parties agree that the contract's interpretation is governed by Maryland substantive law. *Accord Cordish*, 573 F. Supp. 3d at 993.

Maryland does not follow the rule that insurance policies are to be most strongly construed against the insurer." *Cordish*, 573 F. Supp. 3d at 996 (quoting *Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London, Subscribing to Pol'y Number: ARTE018240*, 788 F.3d 375, 379 (4th Cir. 2015)) (quotations omitted).

In this case, the insurance policy provides instructions for interpreting its terms. "[W]ords and phrases that appear in bold and in quotation marks, or in quotation marks only, have special meaning" and are defined in the policy itself. *See* Pierson Aff. Ex. 2 at 31, ECF 17-3 ("Policy").[2] "Words or phrases that are not" defined in the policy "have their ordinary or common meaning" as defined in "the most recently published version of *Webster's Unabridged Dictionary*." *Id.*

Using defined terms, the policy subdivides Two Farms' properties into three principal categories of coverage. These categories are (1) "premises," (2) "reported unscheduled premises," and (3) "unreported premises." *See* Policy at 53, 55, 59; *see also* Policy at 16-30. The parties agree that the Joppa Road property must fit within one of these categories for coverage to attach.

As defined in the policy, a "premises" is a "location scheduled on the Declarations for this Commercial Property Coverage Part." Policy at 53. The Commercial Property Coverage Part Declarations schedules coverage for four specific properties, each of which has a unique coverage limit tailored to its value. *See id.* at 1-4. The parties agree that the Joppa Road property is not a "premises" with a scheduled coverage plan under the policy.

A "reported unscheduled premises," meanwhile, is a "permanently fixed location[] for which" the insured has "submitted a schedule on file" containing three types of information: (1) the address; (2) property, income, and expenses to be covered; and (3) the value of such

---

[2] Pinpoint citations to the "Policy" throughout this opinion refer to the Bates number of the exhibit.

identified property, income, or expenses. *Id.* at 55. Two Farms has not purchased coverage for "reported unscheduled premises" under the policy and the parties agree that the Joppa Road location is not a "reported unscheduled premises." *See id.* at 24.

Finally, an "unreported premises" is "a permanently fixed location that contains 'real property' or 'personal property' in which" the insured has "an insurable interest, but has not been *reported* to" Zurich. *Id.* at 59 (emphasis added). An "unreported premises" is covered under the policy. *Id.* at 25. The parties dispute whether the Joppa Road store was an "unreported premises."

The motions for summary judgment turn on this dispute. Specifically, the dispositive question is whether Two Farms "reported" the Joppa Road property to Zurich when it provided Zurich with a "master list" of its convenience stores that included the Joppa Road location.

The contract does not define the term "reported," so the court draws its definition from "the most recently published version of *Webster's Unabridged Dictionary*." *See* Policy at 31. According to *Webster's*, to report is "to give an account of," "to make a written record or summary of," or "to give a formal or official account or statement of." *See Report*, *Webster's Unabridged Dictionary*, https://www.merriam-webster.com/dictionary/report. These definitions, however, do not dispel the term's ambiguity in the context of the parties' agreement.

On one hand, *Webster's* supports a "broad" interpretation of the term "report" as a generic account of properties. *Cf. Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011). Under such a definition, Two Farms would seem to have "reported" the Joppa Road store to Zurich. After all, on May 28, 2015, Two Farms, through its broker, Lyons, emailed Zurich a spreadsheet identifying its 162 convenience store locations, including the one at Joppa Road. *See* Mot. Ex. 3, ECF 14-4; Mot. Ex. 5, ECF 14-6. The spreadsheet is formally entitled

6

"Royal Farm Store Master List," comprehensively identifies each store by name and address, and even color codes locations by state. In the email, Two Farms' broker also suggests that stores listed in the spreadsheet, like Joppa Road, might not be insured under the policy, explaining that Two Farms "self-insures their convenience stores and only insures corporate properties." Mot. Ex. 3, ECF 14-4. Were the court to apply these undisputed facts to the most capacious version of the *Webster's* definition, Two Farms would appear to have "reported" the Joppa Road convenience store to Zurich, taking it outside the scope of coverage for "unreported premises."[3]

On the other hand, however, the court must interpret the contract as a whole, and doing so also supports "adopting a narrower definition of 'report.'" *Contra Schindler Elevator Corp.*, 563 U.S. at 409. As outlined above, the policy articulates three central categories of property: (1) "premises," (2) "reported unscheduled premises," and (3) "unreported premises." The first two categories require formal reporting: "premises" must be scheduled in the Commercial Property Coverage Part Declarations and "reported unscheduled premises" must be identified with three enumerated classes of information. The third category's embrace of properties that have not been "reported," then, could naturally be understood as referring to properties that have not been reported for purposes of scheduled or unscheduled premises. Such an understanding would be consistent with *Webster's* definition of a "report" as "a formal or official account," with the policy supplying the formal reporting requirements in its

---

[3] Although Two Farms does not contest the existence of the emails and documents its broker sent Zurich, it disputes their admissibility on three grounds: as not produced in discovery, lacking adequate foundation, and inadmissible hearsay. The court rejects each argument. First, even if Zurich did not produce the documents, which it disputes, they were sent *by* an agent of Two Farms and thus Two Farms did not depend on Zurich to produce them. Second, Zurich provided proper foundation through the declarations of Brian Rushlau and Gerri Keenan. *See* Decls., ECFs 20-6, 20-7. Third, the documents are non-hearsay admissions of a party opponent under Federal Rule of Evidence 801(d)(2). Accordingly, the court will consider the documents as admissible evidence.

definitions of "premises" and "reported unscheduled premises." It would also avoid the counterintuitive result of a property like Joppa Road becoming "reported" for purposes of the "unreported premises" definition but not for purposes of the "reported unscheduled premises" definition. Finally, conceiving of the "unreported premises" category as a catchall for properties not reported elsewhere would lend the contract a degree of completeness that would help effectuate its purpose of memorializing "all the agreements between" the parties. *See* Policy at 10. Under this narrower definition of the term "reported," the undisputed facts would include Joppa Road as an "unreported premises" covered by the policy.

Given these competing possible definitions of the term "reported"—and the divergent outcomes to which they point—the court concludes that even after consulting *Webster's*, the term remains ambiguous in the context of the agreement. An examination of extrinsic evidence is therefore warranted to determine the policy's scope, and the parties each contend that such evidence favors their interpretation. As explained below, however, granting either side's motion based on extrinsic evidence would be premature at this stage of the litigation.

The court will deny Zurich's motion because under Federal Rule of Civil Procedure 56(d), the court may deny a motion for summary judgment where "the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." As the affirmation of Two Farms' counsel C. Thomas Brown explains, the defendants have failed to make their employees, including the underwriters of the policy, available to provide deposition testimony. *See* Brown Affirmation ¶¶ 16-26, ECF 17-17. Such testimony may be a critical component of the extrinsic evidence in this case, and Two Farms is unequipped to oppose Zurich's motion without it. These circumstances, and Mr. Brown's

affirmation, satisfy Rule 56(d)'s requirements and preclude granting summary judgment for Zurich at this stage.

The court will deny Two Farms' motion because the extrinsic evidence it has presented is, at this point, insufficient to warrant summary judgment. In its cross-motion, Two Farms primarily points to two outside sources as evidence the policy should be interpreted in its favor: the policy's premium for unreported premises and an email sent by a Zurich underwriter. *See* Partial Cross-Mot. for Summ. J. at 28-30.

Two Farms first claims that the portion of its premium allocated to "Additional Coverage and Adjustments" must have paid for insuring convenience stores because it would otherwise have paid for no coverage at all. *Id.* at 28. Two Farms has introduced no evidence, however, that its property holdings are limited to the four corporate locations it scheduled and the 162 convenience stores it identified. Zurich may well have charged a premium for additional properties outside this scope, or it may have simply assessed the fee to cover the unknown exposure inherent to covering unreported property. Two Farms' depositions of Zurich underwriters may ultimately clarify this fee, but for now, Two Farms has not substantiated its assumption that the "Additional Coverage and Adjustments" premium insured the identified convenience stores.

Two Farms next points to an email sent by a Zurich underwriter which it says evinces a belief within Zurich that the policy covered convenience stores. *Id.* at 29-30. A review of the email, however, reveals that it was prefaced with the explanation that the underwriter was "new" to the account and had "questions" about it. *See* Pierson Aff. at Ex. 3, ECF 17-4. Among those questions was an inquiry about the Joppa Road store, which the email characterized as an "unscheduled location." *See id.* This email does not make Two Farms' case. Most importantly,

9

the email suggests the underwriter was unacquainted with the Two Farms account and thus did not have the personal knowledge required to accurately characterize it under the policy. Even if the underwriter did have the requisite personal knowledge, the email describes the property as "unscheduled"—not "unreported"—so does not sufficiently corroborate Two Farms' position. On both fronts, then, Two Farms' extrinsic evidence is inadequate to warrant summary judgment.[4]

## CONCLUSION

As the court has explained, the policy's definition of an "unreported premises" is ambiguous and calls for consulting extrinsic evidence to resolve its meaning. Zurich cannot rely on extrinsic evidence at this stage, however, because Two Farms has properly filed a Rule 56(d) affirmation requesting additional time to conduct discovery. On the other side of that coin, the evidence Two Farms has adduced to this point is insufficient to compel its reading of the contract. Accordingly, the court will deny both motions for summary judgment without prejudice pending the completion of fact discovery.

A separate order follows.


　8/16/2023　　　　　　　　　　　　　　　　　　　/s/　　　　　　　　　　
Date                                             Catherine C. Blake
                                                 United States District Judge

---

[4] Even if Two Farms' evidence were more persuasive, the court would remain reluctant to grant summary judgment in this posture as a matter of judicial prudence given the extent of critical discovery still outstanding. The court will not retreat to the "last resort" of construing ambiguity against the drafter here for the same reasons. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) (citing 3 A. Corbin, *Contracts* § 559, pp. 268–270 (1960)).