IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| TWO FARMS, INC. d/b/a ROYAL FARMS, | * * * * |
| Plaintiff | * * |
| v. | Civ. No.: MJM-22-1551 |
| ZURICH AMERICAN INSURANCE COMPANY, | * * * * |
| Defendant. | * * |

## MEMORANDUM

This matter is before the Court on cross-motions for summary judgment between plaintiff Two Farms, Inc. d/b/a Royal Farms ("Two Farms") and defendant Zurich American Insurance Company ("Zurich"). Both motions are fully briefed and ripe for disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant Plaintiff's Partial Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

I.  BACKGROUND

This action involves an insurance coverage dispute between Two Farms and Zurich. Two Farms operates a chain of Royal Farms convenience stores in the Greater Maryland area. Zurich issued a policy of insurance (the "Policy") providing coverage for various properties owned by Two Farms, including certain listed premises as well as certain "unreported premises."

1

On or about October 31, 2021, a fire destroyed a Royal Farms property at 1630 West Joppa Road in Towson, Maryland (the "Joppa Property"). Two Farms submitted a claim, but Zurich denied it, taking the position that the Joppa Property was not covered under the Policy.

Additional facts relevant to the Courts analysis are discussed in Part IV *infra*.

## II.   PROCEDURAL HISTORY

Two Farms filed its complaint in the Circuit Court for Baltimore County, Maryland in May 2022 alleging breach of contract. (ECF 4). Zurich removed the matter to this Court the following month, invoking diversity jurisdiction under 28 U.S.C. § 1332, (ECF 1), and filed an answer in July 2022, (ECF 8).

Following limited discovery, the parties filed cross-motions for summary judgment. (ECF 14, 17). After briefing was completed, (ECF 20, 21), the Honorable Catherine C. Blake issued a Memorandum Opinion and Order denying both motions without prejudice, citing a need for further discovery due to ambiguity in the contractual term "unreported premises." (ECF 22, 23); *Two Farms, Inc. v. Zurich Am. Ins. Co.*, 2023 WL 5297816 (D. Md. Aug. 16, 2023).

After further discovery, Two Farms filed a Renewed Motion for Partial Summary Judgment. (ECF 45). Zurich filed a response in opposition and a Cross-Motion for Summary Judgment. (ECF 46). Two Farms filed a reply in support of its motion and a response in opposition to Zurich's motion, (ECF 47), and Zurich filed a reply in support of its motion, (ECF 48). The parties' second round of summary judgment motions is ripe for disposition.

## III.   STANDARD OF REVIEW

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

2

*Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis removed). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 249. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

IV.   **DISCUSSION**

In its Motion for Partial Summary Judgment, Two Farms seeks a ruling from the Court that Zurich is obligated to cover the loss Two Farms sustained at the Joppa Property because the property is covered as an "unreported premises." In its Motion for Summary Judgment, Zurich seeks the opposite ruling—that Zurich is entitled to judgment as a matter of law on Two Farms's

claim. Each party opposes the other party's motion and cites the Policy and extrinsic evidence in support of its position.

### A. Legal Background

Under Maryland law, the language of an insurance policy is construed like any other contract—in accordance with its terms, barring any violation of a statute, regulation, or public policy. *Connors v. Gov't Emps. Ins. Co.*, 113 A.3d 595, 603 (Md. 2015) (citation omitted). "When contractual language is plain and unambiguous," the court must enforce the terms as a matter of law. *Id*. (citation omitted). "If the language of the contract is ambiguous," the court may consider "extrinsic evidence to determine the intent of the parties." *Id*. (citation omitted). A contract is not ambiguous merely because the parties do not agree on its meaning. *Fultz v. Shaffer*, 681 A.2d 568, 578 (Md. Ct. Spec. App. 1996). Under Maryland law, a contract is ambiguous "'if, to a reasonable person, the language used is susceptible of more than one meaning or is of doubtful meaning.'" *Martz v. Day Development Co., L.C.*, 35 F.4th 220, 225 (4th Cir. 2022) (citing *Cochran v. Norkunas*, 919 A.2d 700, 710 (Md. 2007)). Generally, "ambiguities are resolved against the draftsman of the instrument." *John L. Mattingly Const. Co., Inc. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1078 (Md. 2010) (citation omitted). Still, Maryland does not follow the rule applied in other jurisdictions that insurance policies are to be most strongly construed against the insurer. *See Travelers Ins. Co. v. Benton*, 365 A.2d 1000, 1003 (Md. 1976); *Gov't Emps. Ins. Co. v. DeJames*, 261 A.2d 747, 749 (Md. 1970).

Thus, when construing an insurance policy under Maryland law, a court must "first ascertain the intent of the parties from the policy as a whole, considering extrinsic and parol evidence to construe any ambiguity." *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 699 A.2d 482, 494 n.10 (Md. Ct. Spec. App. 1997), quoted in *Connors*, 113 A.3d at 605. "If the contract

is ambiguous, the court must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." *Sy-Lene of Washington, Inc. v. Starwood Urb. Retail II, LLC*, 829 A.2d 540, 547 (Md. 2003) (internal quotation marks and citation omitted). "When addressing an ambiguous provision in a contract, the court 'will search to find mutuality' and not a 'self-serving, unilateral construction' of the contract." *Impac Mortg. Holdings, Inc. v. Timm*, 255 A.3d 89, 96 (Md. 2021) (quoting *Kelley Const. Co. v. Wash. Suburban Sanitary Comm'n*, 230 A.2d 672 (Md. 1967)). Thus, "[t]o be admissible, extrinsic evidence of intent as to the meaning of a contract term must demonstrate 'an intent made manifest, not a secret intent' at the time of contract formation." *Id*. (quoting *Gov't Emps. Ins. Co. v. Coppage*, 212 A.2d 523 (Md. 1965)). "[R]etrospective, subjective, and unexpressed views about the contract are not proper extrinsic evidence: 'It is the intention of the parties as expressed in their words and the paper which they sign, not their own interpretation as to what their statements and acts were supposed to mean, which is determinative.'" *Id*. (quoting *Coppage*, 212 A.2d at 528).

If no admissible extrinsic or parol evidence is introduced to resolve an ambiguity in an insurance policy, "or if the ambiguity remains after consideration of extrinsic or parol evidence that is introduced, it will be construed against the insurer as the drafter of the instrument." *Cheney v. Bell Nat. Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1989) (citing *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486 (Md. 1985), and other cases); *see also Connors*, 113 A.3d at 605. "If the extrinsic evidence presents disputed factual issues, construction of the ambiguous contract is for the jury. The court may construe an ambiguous contract if there is no factual dispute in the evidence." *Pac. Indem.*, 488 A.2d 486, 489 (citation omitted).

**B. Analysis**

The Policy at issue here addresses three principal categories of properties: (1) "premises," (2) "reported unscheduled premises," and (3) "unreported premises." Policy (ECF 37-3) at 53, 55, 59. A "reported unscheduled premises" is defined in the Policy as a "permanently fixed location" for which Two Farms "submitted a schedule on file" containing particular information about the property. *Id* at 55. A property meeting this definition does not receive coverage under the Policy. *Id*. A "premises" and an "unreported premises" are each covered under the Policy. *Id*. at 53, 59. The Policy includes a schedule listing four specific properties that exclusively meet its definition of "premises." *Id*. at 9. The Joppa Property is not among those "premises." *See id.* The Policy defines "unreported premises" as "a permanently fixed location that contains 'real property' or 'personal property' in which [Two Farms] ha[s] an insurable interest, but has not been reported to [Zurich]." *Id*. at 59. The dispositive question here is whether the Joppa Property is an "unreported premises" covered by the Policy.

In its second round of summary judgment briefing in this case, Zurich's primary argument remains that the Policy is unambiguous and that the Joppa Property is not an "unreported premises" and, therefore, is not covered. Def. Mem. at 11–15 (ECF 46-1). Specifically, Zurich argues that Two Farms did "report" the Joppa Property to Zurich. Def. Mem. at 6 (ECF 46-1). Zurich argues that while the Joppa Property is not a "reported unscheduled premises," it was still "reported" informally by inclusion in a "Master List" of 162 properties that Two Farms sent to Zurich when the Policy was first negotiated and signed in May 2015. *Id*. at 12; *see also* Def. Ex. 5 at 152–56 (ECF 46-2).

The Court, first, rejects any contention that the Policy is unambiguous as to the contractual definition of "unreported premises," for the reasons explained in Judge Blake's Memorandum. *See* Mem. at 6–9 (ECF No. 22); *Two Farms*, 2023 WL 5297816, at *3–4. The term "report" in that

6

definition is not itself a term defined in the Policy, and, therefore, the Policy requires that "the most recently published version of *Webster's Unabridged Dictionary*" be consulted to determine its meaning. Policy at 31. This dictionary offers two plausible but competing definitions for "report"—one broader than the other—which produce divergent results when applied to the contractual definition of "unreported premises." *See Report*, WEBSTER'S UNABRIDGED DICTIONARY.[1] If the broader dictionary definition of "report" is used ("to give account of"), then the Joppa Property may not constitute an "unreported premises" under the Policy because Two Farms's insurance broker sent Zurich a "Master List" of Two Farms properties that included the Joppa Property, thereby "reporting" it to Zurich. *See* Def. Ex. 3 (ECF 14-4). If the narrower definition of "report" is used ("to give a formal or official account or statement of"), then, within the larger context of the Policy, the "Master List" would not constitute a "report" because it did not include all categories of information formally required of a "reported unscheduled premises." Policy at 55. Therefore, the Joppa Property would be an "unreported premises." *Id*. at 59. Each of these competing interpretations of "report" is objectively reasonable. Therefore, the Court finds, as a matter of law, that the contractual definition of "unreported premises" is ambiguous.

Zurich next argues that, even if the Policy is deemed ambiguous, the available extrinsic evidence supports Zurich's construction of the Policy. On pages 6 and 7 of its reply memorandum, (ECF 48), Zurich cites in a bulleted list various documents in the record that it contends supports its construction of the Policy. First on the list, Zurich identifies several emails to establish that Two Farms intended for its convenience stores to be "self-insured." *See* Def. Ex. 5 at 134, Def. Ex. 7 at 166, Def. Ex. 8 at 181, Def. Ex. 9 at 188 (ECF 46-2). Specifically, Zurich attaches an email dated July 1, 2015, by which Two Farms's insurance agent transmitted the "Master List" to Zurich and

---

[1] *Report*, WEBSTER'S UNABRIDGED DICTIONARY. ((1) "to give an account of"; (2) "to give a formal or official account or statement of").

stated that Two Farms "self-insures their convenience stores and only insures corporate properties." Def. Ex. 5. In its cross-motion, Zurich cites various legal authorities for the proposition that "self-insurance" indicates either a total lack of insurance coverage or refers to a deductible that applies before insurance coverage kicks in. *See* Def. Mem. at 27–28 (ECF 46-1) (citing *Fellhauer v. Alhorn*, 838 N.E.2d 133, 137 (2005) ("[S]o-called self-insurance is not insurance at all. It is the antithesis of insurance."); *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 305 (5th Cir. 2013) ("When a company self-insures, . . . there is no contract with an insurance company.")). In response, Two Farms cites deposition testimony as to the meaning of "self-insurance" in the emails noted by Zurich. *See* Pl. Mem. at 5–6 (ECF 45-1); Pl. Reply at 23, 26–27 (ECF 47). According to Two Farms Chief Operating Officer John Kemp, Two Farms insures its properties using a "two-leg approach." Mr. Kemp states that, under the two-leg approach, Two Farms strategically insures its properties by (1) having a group of scheduled properties insured together at full value through an insurance provider; and (2) self-insuring unscheduled properties "above the limits provided" for "unreported premises" coverage obtained through an insurance provider. *See generally* Pl. Ex. 83 (ECF 45-26). Two Farms's insurance consultant John Pierson also testified that, in the course of the company's dealings, Two Farms historically used the two-leg approach in obtaining insurance coverage for its properties. Pl. Ex. 82 at 61:14–62:7 (ECF 45-25); Pl. Ex. 84 (Pierson Dep. Tr.) at 11:12–12:3 (ECF 45-27). Zurich offers only argument and cites no evidence to dispute the testimony and evidence identified by Two Farms on this issue.

Furthermore, Jeremy Cohen, Zurich's corporate designee, testified that the only evidence of Zurich's intention regarding coverage for the Joppa Property is the Policy itself. *See generally* Pl. Ex. 81 (Cohen Dep. Tr.) (ECF 45-24). Alyson Miksitz, Zurich's underwriter at the time the Policy was issued, sheds no further light on the matter, testifying that she does not recall what

Zurich's intention was regarding coverage for the Joppa Property, although, if anyone would know, it would have been her. Pl. Ex. 79 (Miksitz Dep. Tr.) at 41:11 (ECF 45-22). In November 2019, after the fire, Zurich's underwriter and claims adjuster at the time scheduled a meeting seeking to clarify the parties' intentions regarding coverage for the Joppa Property. Pl. Ex. 19 (ECF 45-8); Pl. Ex. 29 (ECF 45-12). But the parties to this meeting could not recall the outcome. *See* Pl. Ex. 77 (Rushlau Dep. Tr.) at 78:22–79:11 (ECF 45-21); Pl. Ex. 80 at 37:16 (ECF 45-23). In sum, Zurich offers no admissible extrinsic evidence of its intention regarding coverage for the Joppa Property or whether this property constituted a "unreported premises."

Because the Court finds the Policy to be ambiguous as to whether the Joppa Property is covered as an "unreported premises," and Zurich fails to offer extrinsic evidence of its intention that the Joppa Property was not so covered, the Court must deny Zurich's Motion for Summary Judgment.

The Court also finds the extrinsic evidence in the record inadequate to offer full support of Two Farms's construction of the Policy. Although Two Farms presents extrinsic evidence of its own intention to cover the Joppa Property under the Policy, it falls short of presenting any admissible extrinsic evidence of Zurich's intention that the Joppa Property be covered under the Policy as an "unreported premises." For instance, Two Farms cites the above-described testimony regarding its two-leg approach to property insurance coverage, but it offers no evidence to show that its two-leg approach was ever communicated to Zurich or that Zurich understood Two Farms's intention as to how to cover its convenience stores. Maryland law requires this Court, when faced with a contractual ambiguity, to look past evidence of "secret intent," proffered interpretations that are "self-serving" and "unilateral," and "retrospective, subjective, and unexpressed views about the contract"—seeking, instead, evidence of "mutuality" in the parties' intentions at the time the

contract was formed. *Impac Mortg.*, 255 A.3d at 96 (citations omitted). The record is devoid of any such evidence of mutuality contemporaneous with the negotiation and issuance of the Policy at issue here.

Having searched the record evidence for mutuality with respect to the parties' intentions for the meaning of "unreported premises" and finding the record lacking, the Court is faced with whether to present the matter to a jury or to resolve the question as a matter of law. *See Pac. Indem.*, 488 A.2d at 489. The matter need only be presented to a jury if the record evidence reflects genuine disputes of fact bearing on the meaning of the ambiguous term. *Id.* Here, there are none. Without any triable issue, under Maryland law, the ambiguous term must be construed against the insurer as the drafter of the Policy. *See id.*; *Cheney*, 556 A.2d at 1138; *Connors*, 113 A.3d at 605. Thus, summary judgment on the question of coverage must be entered against Zurich and in favor of Two Farms.

## V. CONCLUSION

For the reasons stated above, the Court shall grant Two Farms's Partial Motion for Summary Judgment (ECF 45) and deny Zurich's Motion for Summary Judgment (ECF 46). The Court finds that the Joppa Property is covered by the Policy as an "unreported premises." A separate Order follows.

 3/31/25                  /S/  
Date                   Matthew J. Maddox  
                   United States District Judge